**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2742-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CARLOS LOPEZ, a/k/a
CARLOS M. LOPEZ,

     Defendant-Appellant.

_____

Submitted September 26, 2023 – Decided December 21, 2023

Before Judges Gilson and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 13-04-0511.

Carlos Lopez, appellant pro se.

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Patrick F. Galdieri, II, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Carlos Lopez appeals from the March 3, 2022 order of the Law Division denying his second petition for post-conviction relief (PCR) as untimely and his application for appointment of counsel. We affirm.

I.

The following facts are derived from the record. In 2014, a jury convicted defendant of first-degree armed robbery, N.J.S.A. 2C:15-1; second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); third-degree theft by unlawful taking, N.J.S.A. 2C:20-3(a); third-degree terroristic threats, N.J.S.A. 2C:12-3(b); and fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(3). In a separate trial that immediately followed, the jury convicted defendant of second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1).

On the armed robbery conviction, the trial court sentenced defendant to a twenty-year term of incarceration, with an eighty-five-percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. The remaining convictions relating to the robbery were merged into the armed robbery conviction. The trial court also sentenced defendant to a consecutive seven-year term of incarceration, with a five-year period of parole ineligibility, on the certain persons offense.

Defendant's convictions arose from the armed robbery of a gas station attendant in Highland Park. At trial, the victim testified that a man in a gray hooded sweatshirt and black jacket approached the station on foot, pointed a gun at his head, and demanded money. After taking approximately $800, the gunman fled toward Woodbridge Avenue. During the robbery, the victim tried to touch the gun, causing a plastic piece to fall off the weapon. The following day, the victim told a detective he could easily identify the robber because he had come to the gas station to try to sell him a bicycle three days earlier.

In addition, the victim reported that the robber had previously attempted to sell him raincoats or ponchos from a green Dodge minivan. The detective who was interviewing the victim recalled that a year earlier he encountered defendant with a box of raincoats in the back of a green Dodge minivan. Three days after the robbery, the victim identified defendant from a photo array.

The following day, officers arrested defendant at his home. During the arrest, the officers saw, but did not seize, a gray hooded sweatshirt that matched the description the victim had given of the suspect's clothing. After waiving his Miranda[1] rights, defendant initially denied knowing the gas station in question, but eventually admitted that the gas station was near a Bank of America branch

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2742-21

he used frequently, that he sold raincoats out of his minivan at gas stations, and that he tried to sell a bicycle to the attendant about a week before the robbery. He stated he was at home with his wife and cousin on the night of the robbery.

During a subsequent search of defendant's home, police seized the gray hooded sweatshirt, as well as a black jacket matching the victim's description of the robber's clothing. In addition, officers found two handguns, one with a broken piece of plastic, and a stun gun in a closet belonging to Ralph Cruz, a friend of defendant's wife, with whom the couple lived. Cruz testified that on the night of the robbery he drove defendant, who was wearing a gray hooded sweatshirt, to a pharmacy a few blocks from the gas station. According to Cruz, after defendant completed his purchase, he returned to the car. As Cruz drove to a convenience store, defendant asked him to turn onto a side street near the gas station and park. Defendant left the car, said he "would be right back," and headed on foot toward Woodbridge Avenue in the direction of the gas station. Six minutes later, defendant returned and said he had "just robbed a gas station." While Cruz did not see a gun in defendant's possession, he noticed "something was bothering" defendant in the area of his waist.

At trial, Cruz identified defendant in a video recording captured by a surveillance camera at the pharmacy about twenty minutes prior to the robbery.

4

Defendant was wearing a gray hooded sweatshirt. In addition, a surveillance recording from the Bank of America branch showed someone fitting the suspect's description running from the gas station toward Woodbridge Avenue.

On direct appeal, we affirmed defendant's convictions and sentence. State v. Lopez, No. A-4552-14 (App. Div. Apr. 11, 2017). The Supreme Court denied defendant's petition for certification. State v. Lopez, 233 N.J. 111 (2017).

Defendant subsequently filed a PCR petition alleging he received ineffective assistance of counsel at trial. He argued his attorney failed to investigate defendant's wife as an alibi witness. In a certification attached to the petition, defendant's wife attested that she was at work on the night of the robbery and made numerous phone calls to the landline at the couple's house. She certified that she spoke with defendant on the landline "at various times throughout the afternoon and into the evening." She also certified that had she been called as a witness she would have testified the couple regularly paid their bills, even though defendant had been out of work for several months at the time of the robbery. Defendant submitted a nearly identical certification. Both defendant and his wife certified that trial counsel advised them the proposed alibi testimony was not strong and should not be used at trial.

5

On December 14, 2018, the trial court issued an order denying defendant's first PCR petition without an evidentiary hearing. We affirmed the trial court's decision. State v. Lopez, No. A-2838-18 (App. Div. Oct. 15, 2020). The Supreme Court denied defendant's petition for certification. 245 N.J. 58 (2021).

On March 2, 2021, defendant filed a second PCR petition in the Law Division. He alleged his trial counsel was ineffective for: (1) "breaching attorney[-]client confidentiality by informing the court on" defendant; (2) "telling [defendant] that he was getting a mistrial that never came to fruition[;]" (3) "putting himself in [the] position of becoming a potential State's witness against" defendant; and (4) "telling the court that he wanted to be relieved from representation of [defendant] and not continuing to zealously represent [defendant's] best interest, when the court prejudicially tainted and tampered with the individual jurors during its[] voir dire." In addition, defendant alleged that his first PCR counsel was ineffective for not raising these claims in his first PCR petition. Defendant also alleged that his trial counsel was ineffective for failing to request DNA testing on the gun found in Cruz's room and for not presenting as a witness an investigator to whom defendant alleges the victim admitted not touching the gun during the robbery. Defendant moved for the appointment of second PCR counsel.

In support of his allegations, defendant alleged that during his trial he had a conversation with his counsel, which his counsel subsequently revealed to the court. In addition, defendant alleged that his counsel informed him that as a result of the disclosure the court would declare a mistrial. Defendant's petition cited the following passage from the trial court transcript:

> The Court: Before we broke you indicated that you had confidence in your lawyer, that he was doing a good job for you. And I will tell you, Mr. Lopez, he is doing a good job for you. He's a very competent lawyer. But he also has an absolute ethical obligation to be candid with the court. So, don't blame him for what he has done. He's doing what he must do legally. Do you understand that?
>
> Defendant: [Y]es, Sir.
>
> The Court: He's reported to the court . . . there was a conversation in which you intimated, or indicated that in fact there was some other person who was going to have somebody reach out for one of the jurors. Do you understand that? That is a crime. And I'm sure your lawyer has told you, don't talk about it, follow your lawyer's advice.
>
> There are several different things we can do. First I'm going to ask each and every individual juror if in fact anybody has approached them to talk to them. And I suspect they are going to say no. I'm going to say good, please, don't infer anything from this conversation, thank you very much, please come back tomorrow. Go back in and then come back tomorrow. And then we're going to finish this case, okay?

A-2742-21

> Because I don't think you can benefit, by the way, [from] a mistrial by causing it yourself.

The court thereafter questioned each of the jurors. When questioning juror number 1, the court stated "I've been asked to make an inquiry, so I'm going to do that" before asking if the juror had been contacted by anyone outside of the court. The court did not make a similar remark to any of the remaining jurors, stating instead something to the effect of what the court said to juror number 2: "[o]n occasion, we ask this question just to make sure everything is okay."

The next day, defendant's counsel moved to be relieved as counsel. He stated that he was "in a position in which the prosecutor is at least leaving open the possibility of me being a witness in a future criminal case against" defendant, which he described as "an unresolvable conflict." The attorney also stated he was uncomfortable with having been ethically compelled to reveal his conversation with defendant. The court denied the motion.

After defendant's conviction, he obtained new counsel. In support of a motion for a new trial, defendant's new counsel argued that the trial court's voir dire of the jurors inquiring whether anyone had contacted them was prejudicial and reversible error. Counsel argued that the court tainted juror number 1 by suggesting that defendant had done something inappropriate, which caused the court to make an inquiry of the juror. In support of this position, counsel argued

8

that the trial court implicitly acknowledged its mistake when it changed its questioning for the remaining jurors. The trial court denied that motion.

Defendant alleged that his first trial counsel was ineffective for revealing his conversation with defendant to the court and for not representing his interests during the voir dire of the jurors. In addition, he alleged that his first PCR counsel was ineffective for not raising these issues in his first PCR petition.

On March 3, 2022, the trial court issued a written opinion dismissing defendant's second PCR petition. The court found that defendant's second PCR petition was untimely because it satisfied none of the factors set forth in Rule 3:22-12(b). The court found that the petition: (1) did not raise a newly recognized constitutional right; (2) was not based on evidence that could not have been discovered earlier through the exercise of reasonable diligence; and (3) was not filed within a year of the denial of defendant's first PCR petition.[2] See R. 3:22-12(2)(A) to (C). The court noted that relaxation of the time limit for filing a second PCR petition is prohibited by the court rule. As a result of its conclusions with respect to the timeliness of the petition, the court also

---

[2] The trial court's opinion states that defendant's second petition was filed more than three years after the denial of his first petition. The record establishes, however, that the second petition was filed on March 2, 2021, two years and three months after the December 14, 2018 dismissal of the first petition.

concluded defendant had not demonstrated good cause for the appointment of counsel.  A March 3, 2022 order memorializes the court's decision.

This appeal follows.  Defendant raises the following arguments.

POINT I

THE SUPPORTING FACTS OUTLINED IN POINT I, AND POIN[T] II OF THIS SUBSEQUENT PETITION FOR POST CONVICTION RELIEF DEMONSTRATE HOW BOTH TRIAL COUNSEL AND FIRST (PCR) COUNSEL WERE INEFFECTIVE IN THEIR REPRESENTATION OF THIS APPELLANT; THEREBY DEPRIVING HIM OF HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL DURING HIS TRIAL, AND POST TRIAL JUDICIAL REVIEWS.

POINT II

IT WOULD BE A FUNDAMENTAL INJUSTICE NOT TO RELAX THE PROCEDURAL BAR WHERE APPELLANT'S FIRST PCR LAWYER AND HIS DIRECT APPEAL LAWYER FAILED TO ARGUE THE INEFFECTIVE COUNSEL CLAIMS ON [(SIC)] HIS TRIAL LAWYER FOR THE ISSUES HE ASSERTS IN HIS SUBSEQUENT PCR.

II.

We review de novo the trial court's legal conclusion that defendant's second PCR petition is barred by R. 3:22-4 and R. 3:22-12(a)(2).  State v. Harris, 181 N.J. 391, 419 (2004).

10

Rule 3:22-4(b) provides, in relevant part:

> A second or subsequent petition for post-conviction relief shall be dismissed unless:
>
> (1)     it is timely under R. 3:22-12(a)(2); and
>
> (2)     it alleges on its face either:
>
> (A)     that the petition relies on a new rule of constitutional law, made retroactive to defendant's petition by the United States Supreme Court or the Supreme Court of New Jersey, that was unavailable during the pendency of any prior proceedings; or
>
> (B)     that the factual predicate for the relief sought could not have been discovered earlier through the exercise of reasonable diligence, and the facts underlying the ground for relief, if proven and viewed in light of the evidence as a whole, would raise a reasonable probability that the relief sought would be granted; or
>
> (C)     that the petition alleges a prima facie case of ineffective assistance of counsel that represented the defendant on the first or subsequent application for post-conviction relief.

Rule 3:22-12(a)(2) provides that "no second or subsequent petition shall be filed more than one year after the latest of" the following:

> (A)     the date on which the constitutional right asserted was initially recognized by the United States Supreme Court or the Supreme Court of New Jersey, if that right has been newly recognized by either of those Courts and made retroactive by either of those Courts to cases on collateral review; or

11

(B)    the date on which the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence; or

(C)    the date of the denial of the first or subsequent application for post-conviction relief where ineffective assistance of counsel that represented the defendant on the first or subsequent application for post-conviction relief is being alleged.

"These time limitations shall not be relaxed, except as provided herein."  R. 3:22-12(b).

Defendant does not allege he is entitled to relief based on a newly recognized constitutional right.  His second petition, therefore, does not fall within subsection (A) of the rule.  Nor does defendant allege that his second petition is based on facts he recently discovered.  His second petition, therefore, does not fall within subsection (B) of the rule.

Defendant's second petition alleges he was denied the effective assistance of counsel with respect to his first petition.  Subsection (C) of the rule requires that a second petition alleging such claims must be filed no more than a year after the date of the denial of the first petition.  Defendant's first petition was denied on December 14, 2018.  He did not file his second petition until March 2, 2021, more than two years later.

12

Defendant mistakenly argues that the one-year period for filing the claims in the second PCR petition alleging ineffective assistance of first PCR counsel began to run on January 22, 2021, when the Supreme Court denied his petition for certification of our decision affirming the dismissal of his first petition. The one-year period, however, began on the day that his first petition was denied by the trial court. See State v. Jackson, 454 N.J. Super. 284, 292 (App. Div. 2018) (beginning calculation of one-year period on the day that first PCR petition was denied, even though the defendant filed an appeal with this court and subsequently filed a petition for certification with the Supreme Court).

As a general rule, the court may not relax the time limit for filing a second PCR petition. Id. at 292-94. Defendant's claim of fundamental injustice, therefore, does not provide refuge from the denial of his untimely second petition. Unlike Rule 3:22-12(a)(1)(A), which applies to the filing deadline for a first PCR petition, Rule 3:22-12(a)(2) does not allow relief from a mandatory time bar based on fundamental injustice. See Id. at 293-94.

In addition, the claims alleged by defendant in his second petition are not the equivalent of the "compelling" constitutional issues before the Court in State in the Interest of C.K., 233 N.J. 44, 58 (2018). There, the Court made an exception to the general rule to consider a late-filed second PCR petition that

challenged the constitutionality of Megan's Law lifetime registration and notification requirements on juvenile offenders. Defendant's second PCR petition raises ineffective assistance of counsel claims specific to the allegations made in his first PCR petition. Defendant's claims are limited to the performance of his PCR counsel and whether he effectively raised claims relating to the performance of defendant's trial counsel. Defendant's second petition raises no compelling constitutional claim of widespread application that would warrant departure from the time limits established in Rules 3:22-4 and 3:22-12(b).

Finally, because defendant's untimely petition does not raise "a substantial issue of fact or law[,]" R. 3:22-6(b), the trial court properly denied his application for appointment of counsel.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2742-21